UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LINDA EVANGELISTA,

    *Plaintiff,*

-against-

ZELTIQ AESTHETICS, INC.,

    *Defendant.*

**CASE NO: 21-cv-7889**

**PLAINTIFF LINDA EVANGELISTA'S RESPONSE TO DEFENDANT ZELTIQ AESTHETIC, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY**

---

**WROBEL MARKHAM LLP**
1407 Broadway, Suite 4002
New York, NY 10018
Tel: (212) 421-8100
Fax: (212) 421-8170
*Attorneys for Plaintiff Linda Evangelista*

Plaintiff Linda Evangelista submits this response to Defendant Zeltiq Aesthetics, Inc.'s ("Zeltiq") notice of supplemental authority, dated June 14, 2022 (ECF 58), in support of its motion to dismiss Ms. Evangelista's Amended Complaint (ECF 17).

Zeltiq's supplemental authority, *Dearinger v. Eli Lilly & Co.*, 2022 WL 1788992 (Wash. June 2, 2022), is not binding, persuasive, or instructive. *See, e.g., Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). *Dearinger* is a creature of Washington state law, and the Washington Supreme Court's refusal to find an exception to the learned intermediary doctrine turned upon its interpretation of the Washington Product Liability Act ("WPLA") and the interplay between the WPLA and Washington's common law adoption of the learned intermediary doctrine preceding the WPLA. The *Dearinger* Court determined that nothing in the text of the WPLA abrogated the learned intermediary doctrine and rejected what it determined plaintiff's "unsubstantiated" policy rationales for carving an exception to the learned intermediary doctrine on the facts before it, which included, among other things, increased direct-to-consumer advertising for prescription drugs. *Id.*, at *4.

*Dearinger* provides no insight into whether, under New York law, the learned intermediary doctrine even applies where, as here, the relationship between the plaintiff and her physician and the role each played in plaintiff choosing to undergo an elective, cosmetic procedure using a medical device, like the CoolSculpting device, is a factual issue. *Plaintiff Linda Evangelista's Memorandum of Law in Opposition to Defendant Zeltiq's Motion to Dismiss, dated January 18, 2022 ("Plaintiff Opp.") at 10-11*. Nor does *Dearinger* shed any light on whether New York law might recognize an exception to the learned intermediary doctrine

where a medical device manufacturer, like Zeltiq, engages in documented, "targeted and strategic" direct-to-consumer advertising with the stated purpose to "build[] awareness in the marketplace by having consumers (a) go to existing local practices and request treatment and drive consumable revenue, or (b) go to their local physician who does not yet have consumable services, create the desire and drive system revenue." *Plaintiff Opp. at 11-12.*

Zeltiq overlooks these stark distinctions and indeed seems to draw the Court's attention to *Dearinger* for no more than its passing reference to *Perez v. Wyeth Laboratories, Inc.*, 734 A.2d 1245 (N.J. 1999), as if Ms. Evangelista's opposition to Zeltiq's motion to dismiss is based on nothing else. *Plaintiff Opp. at 6-13.* And Zeltiq's reduction of the Washington Supreme Court's analysis, in *Dearinger*, to a characterization that it "rejected the application of the New Jersey Supreme Court's decision in [*Perez*]" is both disingenuous and misleading, as set forth below. Moreover, even *Dearinger* recognizes that the learned intermediary doctrine is not an absolute defense; *Dearinger* expressly states that a manufacturer warning must be adequate in order for the learned intermediary doctrine even to apply. *Dearinger,* 2022 WL 1788992, at *7 ("[U]nder the learned intermediary doctrine, if the warning to the prescriber is inadequate, then the manufacturer is liable."); *Plaintiff Opp. at 6-9.*

In short, Zeltiq's cursory reading of *Dearinger* ignores the clear factual distinctions and nuances of the Washington Supreme Court's analysis of the learned intermediary doctrine under Washington law. Furthermore, it offers the Court no basis for dismissing Ms. Evangelista's Amended Complaint at this stage of the litigation where the pleaded facts call into question the very adequacy of Zeltiq's warnings regarding paradoxical adipose hyperplasia, *Plaintiff Opp. at 6-9*; where Zeltiq has not established that the learned intermediary doctrine even applies in the context of an elective, cosmetic procedure, like CoolSculpting, under New York law, *Plaintiff*

*Opp. at 10-11*; and where the Amended Complaint plainly documents Zeltiq's aggressive, "targeted and strategic" direct-to-consumer mass market campaign where it purposely injected itself into and sought to interrupt the doctor-patient relationship that it now hides behind with the stated purpose to drive consumer revenue, *Plaintiff Opp. at 11-13*. In fact, in its CoolSculpting Consumer FAQ, Zeltiq specifically encouraged patients to make their own decisions regarding what treatment they want/need and, rather than heed a doctor's recommendation, "accept no substitutes for CoolSculpting." *Plaintiff Opp. at 13 (quoting ECF 17, ¶52).*

For these reasons, as well those set forth in greater detail in Ms. Evangelista's Opposition to Zeltiq's Motion to Dismiss, this Court should disregard Zeltiq's "supplemental authority" and further deny its motion to dismiss at this stage of the litigation.

Dated: New York, New York
June 21, 2022

Respectfully submitted,

**WROBEL MARKHAM LLP**

By: *Daniel F. Markham*
Daniel F. Markham (DM8431)
1407 Broadway, Suite 4002
New York, New York 10018
Tel: (212) 421-8100
dmarkham@wmlawny.com
*Attorneys for Plaintiff Linda Evangelista*

4